IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

END CITIZENS UNITED PAC
100 M Street
Washington, DC 20003,

                Plaintiff,

          v.

FEDERAL ELECTION COMMISSION
1050 First Street NE
Washington, DC 20463,

                Defendant.

Civil Action No. 1:21-cv-2128

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. Plaintiff End Citizens United ("ECU") brings this action against the Federal Election Commission ("FEC" or "Commission") pursuant to 52 U.S.C. § 30109(a)(8), challenging as contrary to law the FEC's dismissal of the two administrative complaints Plaintiff filed against U.S. Senator Rick Scott, Rick Scott for Florida ("Scott Campaign"), and New Republican PAC for violations of the Federal Election Campaign Act ("FECA").

2. On April 10, 2018, ECU filed an administrative complaint alleging that, in the 2018 Florida Senate race, Rick Scott circumvented FECA's regulation of campaign spending by effectively outsourcing his early campaigning to New Republican PAC—an "independent" super PAC that, in reality, Scott controlled. *See* Ex. A, Admin. Compl., MUR 7370 (Apr. 10, 2018); Ex. B, Supp. Admin. Compl., MUR 7370 (Apr. 17, 2018). By improperly using New Republican PAC to support his nascent candidacy, Scott became a candidate months before officially declaring that candidacy with the FEC. Ex. A, Admin. Compl. at 1-4, MUR 7370.

1

3. ECU's April 10 administrative complaint thus asked the FEC to find reason to believe that (1) Scott failed to timely file a Statement of Candidacy in violation of 52 U.S.C. § 30102(e)(1); (2) the Scott Campaign failed to timely file a Statement of Organization and required campaign spending reports in violation of 52 U.S.C. §§ 30103(a) and 30104; and (3) New Republican PAC violated 52 U.S.C. § 30125(e) by raising or spending prohibited campaign funds while controlled by Scott.

4. Section 30125(e) prohibits any entity "established, financed, maintained or controlled by or acting on behalf of" a federal candidate from raising and spending funds that do not comply with FECA's "limitations, prohibitions, and reporting requirements." 52 U.S.C. § 30125(e)(1). Funds that do not comply with FECA's limitations, prohibitions, and reporting requirements are called "soft money."

5. Section 30125(e) strictly circumscribes a federal candidate's involvement with groups that are permitted to raise soft money—such as independent-expenditure-only political committees, known as "super PACs"—in order to prevent candidates from establishing or operating such groups as slush funds to support their campaigns. As the Supreme Court has explained, "[l]arge soft-money donations at a candidate's or officeholder's behest give rise to all of the same corruption concerns posted by contributions made directly to the candidate or officeholder." *McConnell v. FEC*, 540 U.S. 93, 182 (2003).

6. On September 5, 2018, ECU filed a second administrative complaint, further alleging that, even if Scott did in fact become a candidate when he filed his Statement of Candidacy on April 9, 2018, New Republican PAC impermissibly coordinated its subsequent expenditures with the Scott Campaign, resulting in excessive contributions from New Republican PAC to the Scott Campaign. *See* Ex. C, Admin. Compl., MUR 7496 (Sept. 5, 2018).

7.     After reviewing the allegations in Plaintiff's administrative complaints, the FEC's nonpartisan career attorneys in its Office of General Counsel ("OGC") recommended that the Commission find reason to believe that (1) Scott violated 52 U.S.C. § 30102(e)(1) by failing to timely file his Statement of Candidacy and designate a principal campaign committee; (2) the Scott Campaign violated 52 U.S.C. §§ 30103(a) and 30104 by failing to timely file a Statement of Organization and disclosure reports; and (3) New Republican PAC violated 52 U.S.C. § 30125(e) by soliciting, receiving, or spending soft money in connection with a federal election. First General Counsel's Report, at 11-22, MURs 7370 and 7496 (New Republican PAC, *et al.*) (Dec. 2, 2020), https://www.fec.gov/files/legal/murs/7370/7370_14.pdf. OGC also recommended that the FEC conduct an investigation. *Id.* at 18, 22. As to ECU's other allegations, OGC recommended that the Commission take no action pending that investigation, which could reveal evidence relevant to the additional claims. *Id.* at 22-23, 25.

8.     Despite compelling evidence and the recommendation of its General Counsel, on May 20, 2021, the FEC's Commissioners deadlocked 3–3 on a vote to find reason to believe that the respondents violated the law. *See* Certification, MURs 7370 and 7496 (May 28, 2021), https://www.fec.gov/files/legal/murs/7370/7370_15.pdf. On June 10, 2021, the FEC "closed the file," dismissing Plaintiff's administrative complaints. *See* Certification, MURs 7370 and 7496 (June 14, 2021), https://www.fec.gov/files/legal/murs/7370/7370_16.pdf.

9.     The FEC's failure to find reason to believe and its dismissal of Plaintiff's administrative complaints were arbitrary, capricious, and contrary to law. *See Orloski v. FEC*, 795 F.2d 156, 161 (D.C. Cir. 1986). The Commission's refusal to enforce the law has allowed wealthy donors, including corporations, to sidestep FECA's contribution limits by making unlimited contributions to a super PAC established, financed, maintained, or controlled by candidate Scott.

3

Without enforcement of FECA provisions designed to prevent circumvention of contribution limits, such as section 30125(e), "the integrity of our system of representative democracy is undermined." *Buckley v. Valeo*, 424 U.S. 1, 26-27 (1976) (per curiam).

10. Plaintiff has suffered directly as a result of the FEC's refusal to enforce the law because it allows ECU's political opponents, Rick Scott, the Scott Campaign, and New Republican PAC, to raise money for a super PAC in violation of federal law, placing Plaintiff (which always seeks to comply with federal law) at a competitive disadvantage and forcing Plaintiff to spend its resources countering its opponents' illegally raised funds.

11. The dismissal of Plaintiff's administrative complaints has further harmed Plaintiff because ECU, as well as the public, has been deprived of full disclosure about when Scott in fact became a candidate, the activities undertaken by Scott and his agents to control New Republican PAC, the amounts raised and spent by Scott and New Republican PAC to further Scott's campaign before Scott declared his candidacy, the nature of the ongoing relationship between New Republican PAC and the Scott Campaign, and whether New Republican PAC's expenditures should be deemed "coordinated" with the Scott Campaign. This is information to which Plaintiff is legally entitled under FECA, and which ECU relies upon for work that is central to its mission, including educating the public, deciding which candidates to support or oppose, and monitoring for campaign finance violations.

12. Plaintiff therefore respectfully requests that this Court declare that the FEC's dismissal of Plaintiff's administrative complaints was arbitrary, capricious, and contrary to law, and order the FEC to conform within 30 days.

## JURISDICTION AND VENUE

13. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 52 U.S.C. § 30109(a)(8)(A). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

14. Venue in this district is proper under 52 U.S.C. § 30109(a)(8)(A) and 28 U.S.C. § 1391(e).

## THE PARTIES

15. Plaintiff ECU is a political action committee whose mission is to get big money out of politics and protect the right to vote by working to elect reform-oriented politicians, pass meaningful legislative reforms, and elevate electoral issues in the national conversation.

16. As part of its efforts, ECU was actively engaged in the 2018 Florida Senate race. ECU endorsed Scott's opponent, then-Senator Bill Nelson, in July 2017.[1] ECU also contributed $15,000 to Nelson's campaign.[2] This spending was not only in opposition to the Scott Campaign, it was also opposed to the Scott Campaign's aligned super PAC, New Republican. ECU's support of Nelson was part of ECU's larger efforts to elect a Democratic majority to the Senate in 2018. To that end, ECU contributed $186,000 to Democratic Senate candidates and spent $4.3 million in independent expenditures in support of Democratic Senate candidates nationwide.

---

[1]   End Citizens United, *End Citizens United Endorses Senator Bill Nelson For Re-election* (July 6, 2017), https://endcitizensunited.org/latest-news/press-releases/end-citizens-united-endorses-senator-bill-nelson-re-election/.

[2]   *See* End Citizens United, Disbursements to Bill Nelson for US Senate, 2017-18, FEC.GOV, https://www.fec.gov/data/disbursements/?cycle=2018&data_type=processed&committee_id=C00573261&recipient_name=nelson&two_year_transaction_period=2018&line_number=F3X-23. $5,000 of the $15,000 ECU contributed to Nelson's campaign went toward the recount in the 2018 Florida senate race.

17. ECU currently intends to be actively engaged in the 2024 Florida Senate race. On February 11, 2019, Senator Scott filed a Statement of Candidacy for the 2024 Senate race in Florida.[3] And New Republican PAC continues to solicit donations on its website, *see* https://newrepublican.org/, despite not reporting any independent expenditures since it supported Scott's campaign in the 2018 election cycle.[4]

18. The FEC's dismissal of Plaintiff's administrative complaints has harmed ECU by allowing its political competitors—Scott, the Scott Campaign, and New Republican PAC—to unlawfully raise and spend soft money with impunity. In contrast, ECU always seeks to comply with FECA, which bars ECU and all other PACs and super PACs from raising or spending soft money on behalf of a federal candidate, and from contributing excessive amounts to candidates. As a result, ECU has suffered, and will likely suffer in the future, harm to its interest in participating in political contests untainted by FECA-banned practices. The FEC's refusal to hold ECU's opponents accountable for their illegal practices increases the likelihood that ECU will be outspent by those opponents and that ECU's political opponents will be elected. This competitive disadvantage forces Plaintiff to spend its resources countering its opponents' illegally raised funds.

19. ECU and its staff also spend a significant amount of time reviewing and monitoring FEC reports. ECU relies on accurate information being included in FEC reports in a number of ways. First, ECU uses the information in FEC reports to track outside and corporate spending in our elections, and to highlight issues critical to ECU, such as dark-money spending in elections and the corrosive influence of single-candidate PACs and corporate PACs. ECU uses this

---

[3] *See* Sen. Rick Scott, Statement of Candidacy, FEC Form 2 (Feb. 11, 2019), https://docquery.fec.gov/pdf/999/201902119145495999/201902119145495999.pdf.

[4] *See* New Republican PAC, 2019-2020 Financial Summary, FEC.GOV, https://www.fec.gov/data/committee/C00544544/?tab=summary&cycle=2020.

information to create reports, craft candidate messaging, and provide statements to the press. Second, ECU uses the information in FEC reports to assess how to allocate its resources in supporting or opposing candidates, making independent expenditures, and organizing its efforts to elect candidates who favor democracy reform. Third, ECU uses information in FEC reports to determine whether to file FEC complaints against candidates and PACs that violate campaign finance laws. This work is obstructed and ECU is injured where, as here, campaign finance information subject to mandatory disclosure under FECA is not available.

20. Defendant FEC is an independent federal agency charged with the administration and civil enforcement of FECA. 52 U.S.C. § 30106(b).

## LEGAL BACKGROUND

### I. FECA's Relevant Requirements and Prohibitions

#### A. Candidacy

21. FECA imposes certain fundraising and disclosure requirements on anyone who becomes a "candidate." A person becomes a "candidate" if he or she (a) receives "contributions" or makes "expenditures" in excess of $5,000, or (b) gives consent to another person to receive contributions or make expenditures on his or her behalf and if he or she has received such contributions or has made such expenditures in excess of $5,000. 52 U.S.C. § 30101(2).

22. Within 15 days of meeting the $5,000 threshold, the candidate must designate a principal campaign committee by filing a Statement of Candidacy with the Commission. 52 U.S.C. § 30102(e)(1); 11 C.F.R. § 101.1(a). The principal campaign committee must then file a Statement of Organization within ten days of its designation, *id.* § 30103(a); 11 C.F.R. § 102.1(a), and must file comprehensive disclosure reports with the Commission in accordance with 52 U.S.C. § 30104(a) and (b), *see id.* § 30104(a); 11 C.F.R. § 104.1(a).

23. The FEC has established limited "testing the waters" exemptions to these rules that allow an individual to test the feasibility of a federal campaign without becoming a candidate. *See* 11 C.F.R. §§ 100.72, 100.131. These exemptions exclude from the definitions of "contribution" and "expenditure" those funds received and payments made solely to determine whether an individual should become a candidate. *Id.* §§ 100.72(a), 100.131(a). An individual who is testing the waters need not register or file disclosure reports with the Commission unless and until the individual subsequently decides to run for federal office. Advisory Op. 2015-09 (Senate Maj. PAC, *et al.*). However, an individual who tests the waters must keep financial records and, if he or she becomes a candidate, all funds received or payments made in connection with testing the waters become contributions and expenditures under FECA and must be reported as such in the first report filed by the candidate's principal campaign committee. 11 C.F.R. § 101.3. Soft money may not be used for testing-the-waters activities. *Id.* §§ 100.72, 100.131.

24. The "testing the waters" exemptions are not available to individuals who have made a decision to become a candidate. *See, e.g.*, Payments Received for Testing the Waters Activities, 50 Fed. Reg. 9992, 9993 (Mar. 13, 1985) (exemption "explicitly limited 'solely' to activities designed to evaluate a potential candidacy"). The Commission, in deciding whether an individual is no longer testing the waters and has decided to run for federal office, assesses an individual's actions to discern whether and when an individual decided to become a candidate. *See* 11 C.F.R. §§ 100.72(b), 100.131(b). Commission regulations set forth a non-exhaustive list of activities that indicate that an individual is no longer testing the waters and has decided to become a candidate. Such indicia include undertaking activity designed to amass campaign funds that would be spent after they become a candidate. 11 C.F.R. §§ 100.72(b), 100.131(b).

### B. The Soft-Money Ban

25. FECA prohibits federal candidates and officeholders, their agents, and entities directly or indirectly established, financed, maintained or controlled by or acting on behalf of one or more candidates or individuals holding federal office, from "solicit[ing], receiv[ing], direct[ing], transfer[ing], or spend[ing] funds in connection with an election for Federal office, . . . unless the funds are subject to the limitations, prohibitions, and reporting requirements of [the] Act." 52 U.S.C. § 30125(e)(1)(A); *see also* 11 C.F.R. § 300.61.

26. These "limitations" and "prohibitions" of FECA include a $5,000 limit on contributions to multicandidate political committees, 52 U.S.C. § 30116(a)(1)(C), a $5,000 limit on contributions from multicandidate political committees to candidates, *id.* § 30116(a)(2)(A), and a prohibition on corporate contributions, *id.* § 30118.

27. To determine whether a candidate or his or her agent "directly or indirectly established, finances, maintains, or controls" an entity under section 30125(e)(1)(A), the Commission considers ten non-exhaustive factors "in the context of the overall relationship between the sponsor and the entity." 11 C.F.R. § 300.2(c)(2). Among these factors are whether the candidate or his or her agent "has the authority or ability to hire, appoint, demote, or otherwise control the officers, or other decision-making employees or members of the entity," "has common or overlapping officers or employees with the entity that indicates a formal or ongoing relationship," "has authority or ability to direct or participate in the governance of the entity," or "provides funds or goods in a significant amount or an ongoing basis to the entity, such as through direct or indirect payments for administrative, fundraising, or other costs . . . ." *Id.* § 300.2(c)(2)(iii), (v), (vii).

9

### C. Prohibition on Contributions by Super PACs to Candidates

28. FECA defines a "contribution" to include "any gift . . . or anything of value made by any person for the purpose of influencing any election for Federal office." 52 U.S.C. § 30101(8)(A). Super PACs are prohibited from contributing to candidates and their authorized committees, *see* 52 U.S.C. §§ 30116(a), 30118(a); Advisory Op. 2010-11 (Commonsense Ten) at 2-3, and it is unlawful for candidates, political committees, and their officers and employees to knowingly accept an excessive or prohibited contribution, 52 U.S.C. §§ 30116(f), 30118(a).

29. One type of contribution is a "coordinated expenditure," which is an expenditure made by any person "in cooperation, consultation, or concert, with, or at the request or suggestion of," a candidate, a candidate's authorized committee, or the agents of either. 52 U.S.C. § 30116(a)(7)(B)(i). A "coordinated communication" is one form of coordinated expenditure. 11 C.F.R. § 109.21(b). Thus, a super PAC "may not make contributions to candidates or political party committees, including in-kind contributions such as coordinated communications." Advisory Op. 2017-10 (Citizens Against Plutocracy) at 2 (quoting Advisory Op. 2016-10 (Great America PAC) at 3-4).

## II. FEC Enforcement Actions

30. Any person may file a complaint with the FEC alleging a violation of FECA. 52 U.S.C. § 30109(a)(1). FEC regulations specify, in relevant part, that a complaint must identify the complainants and be sworn and signed, and that the allegations in a complaint "not based upon personal knowledge" should identify the source of the information that "gives rise to the complainant's belief in the truth of such." 11 C.F.R. § 111.4(b), (d).

31. The Commission, after reviewing the complaint and any responses, then votes on whether there is "reason to believe" a violation has occurred, in which case it "shall" investigate.

52 U.S.C. § 30109(a)(2). FECA requires the FEC to find "reason to believe" by at least four affirmative votes of the six members of the Commission. *Id.*

32. The Commission will find "reason to believe" where a complaint "credibly alleges" that a FECA violation "may have occurred." FEC, Statement of Policy Regarding Commission Action in Matters at the Initial Stage in the Enforcement Process, 72 Fed. Reg. 12545 (Mar. 16, 2007).

## FACTUAL BACKGROUND

33. New Republican PAC is super PAC that registered with the FEC on May 8, 2013.[5] Its stated purpose is to advance "ideas of what the next generation of Republicans" should represent and to support candidates who fit the "New Republican" model.[6] Though active for several years after forming,[7] by May 2017, New Republican PAC had not received any contributions in more than a year. *See* Ex. A, Admin. Compl. at 1, MUR 7370.[8]

34. In May 2017, Scott became Chair of New Republican PAC. *See id.* Under Scott's leadership, New Republican PAC hired Scott's "core team of consultants from his prior gubernatorial campaigns," including his former chief of staff and campaign manager, Melissa Stone. *Id.* at 2. New Republican PAC also retained Stone's political consulting firm, Calvary

---

[5] New Republican PAC, Statement of Organization, FEC Form 1 (filed May 8, 2013), https://docquery.fec.gov/pdf/943/13031064943/13031064943.pdf.

[6] See Resp. of New Republican PAC at 2, MUR 7370, (June 18, 2018), https://www.fec.gov/files/legal/murs/7370/7370_13.pdf.

[7] *See* General Counsel's Report at 5-6.

[8] *See id.* at 6, n.13 ("New Republican raised $150,000 in 2016, all of which was received in April. Similarly, New Republican received no contributions in 2017 until it was announced that Scott was becoming its Chair.") (citations omitted).

11

Strategies; hired a "top advisor" to Stone as Treasurer; and retained a longtime Scott fundraiser. *Id.*

35. Scott was not yet a declared candidate for Senate in May 2017, but political strategists in both parties viewed New Republican PAC "as a vehicle to raise money ahead of Scott's anticipated bid to unseat Democratic U.S. Sen. Bill Nelson in 2018."[9] Brian Burgess, a former spokesman for Scott, stated at that time: "He is running for Senate. That's all this is about." *Id.* at Ex. I; *see also id.* at 3 ("[T]wo Republican officials told the *New York Times* that Scott's advisors' work on the PAC was 'an indication that he intends to challenge Senator Bill Nelson.'") (citation omitted).

36. Scott "revived" New Republican PAC, raising $275,000 for the super PAC in the first month after he became Chair, and almost $1.2 million by the end of 2017. *Id.* at 1.[10] In the first quarter of 2018, New Republican raised over $1.2 million. General Counsel's Report at 7.[11] From the time Scott became Chair until the day before Scott announced his candidacy on April 9, 2018, New Republican PAC reported raising more than $2.3 million—"more than twice what New Republican raised in the 2013-2014 and 2015-2016 election cycles combined." Statement of Reasons of Chair Shana M. Broussard and Comm'r Ellen L. Weintraub, MURs 7370 and 7496, at

---

[9] Ex. A, Admin. Compl. at Ex. I, MUR 7370 (Gary Rohrer, *Gov. Scott forms new PAC ahead of likely U.S. Senate run*, ORLANDO SENTINEL (May 22, 2017), https://www.orlandosentinel.com/politics/os-gov-scott-political-committee-20170518-story.html).

[10] *See id.* at Ex. B (Marc Caputo & Matt Dixon, *Scott takes big step toward Florida Senate challenge*, POLITICO (Feb. 1, 2018), https://www.politico.com/story/2018/02/01/rick-scott-florida-senate-bill-nelson-midterms-381262).

[11] *See also* New Republican PAC, 2017 Am. Year-End Report, FEC Form 3X (filed Feb. 23, 2018), https://docquery.fec.gov/pdf/418/201802239095523418/201802239095523418.pdf; New Republican PAC, 2018 April Quarterly Report, FEC Form 3X (filed April 15, 2018), https://docquery.fec.gov/pdf/298/201804159108162298/201804159108162298.pdf.

4 (July 15, 2021), https://www.fec.gov/files/legal/murs/7370/7370_20.pdf ("Broussard & Weintraub SOR").

37. As a super PAC, New Republican PAC accepted both corporate and unlimited contributions during the 2018 election cycle. General Counsel's Report at 7. On May 3, 2018, New Republican PAC used its funds to make its first independent expenditure in almost four years to oppose to Bill Nelson, Scott's opponent. *See* Ex. C, Admin. Compl. at 3, MUR 7496. The super PAC went on to make more than $30 million in independent expenditures between May and November 2018, nearly all of which was spent in support of Scott's campaign. *See* Broussard & Weintraub SOR at 4.

38. Although Scott claims to have stepped down as Chair of New Republican PAC as early as December 2017, *see* General Counsel's Report at 8, a spokesperson for his own campaign told a reporter in early April 2018 that "Scott stepped down as Chair [of New Republican] in February" 2018,[12] and press reports identify him as the chair of the super PAC as late as March 3, 2018.[13]

39. Regardless, Scott continued fundraising for New Republican PAC well into 2018. *Politico* reported in February 2018 that, when Scott met with donors to raise funds for New Republican PAC, he was displaying "confidence" about a Senate run and "talked up his good

---

[12]   Ex. C, Admin. Compl. at 2, MUR 7496 (citing John Kennedy, *Election Complaint Filed Against Rick Scott PAC*, THE GAINESVILLE SUN (Apr. 10, 2018), https://www.gainesville.com/news/20180410/elections-complaint-filed-against-rick-scott-pac).

[13]   *Id.* (citing Sean Sullivan, *Florida Gov. Rick Scott to put inface time with GOP donors ahead of possible Senate run*, WASH. POST (Mar. 3, 2018) https://www.washingtonpost.com/news/powerpost/wp/2018/03/03/florida-gov-rick-scott-to-put-in-face-time-with-gop-donors-ahead-of-possible-senate-run/).

polling numbers."[14] On March 3, 2018, Scott was a "featured guest" at a New Republican PAC fundraiser held in his own home, described as "one in a series of regular get-togethers" Scott had with New Republican PAC donors while he was Chair. Ex. A, Admin. Compl. at Ex. H, MUR 7370 (Sean Sullivan, *Florida Gov. Rick Scott to Put in Face Time with GOP Donors Ahead of Possible Senate Run*, Wash. Post (Mar. 3, 2018), https://www.washingtonpost.com/news/powerpost/wp/2018/03/03/florida-gov-rick-scott-to-put-in-face-time-with-gop-donors-ahead-of-possible-senate-run/). On March 29, 2018, Jenny Drucker—whose firm, Drucker Lawhon, was paid $44,653.54 by New Republican PAC in 2018, including $37,205.45 on March 21, 2018—sent a fundraising solicitation to prospective donors seeking contributions to the Scott campaign. See Ex. B, Supp. Admin. Compl. at 2 & Ex. O, MUR 7370. That solicitation identified the Scott Campaign's address as 224 E. 6th Ave., Tallahassee, FL, 32303, which was also New Republican PAC's address until it filed an amended statement of organization with the FEC on April 5, 2018. *Id*.; see also New Republican PAC, Statement of Organization, FEC Form 1 (amended Feb. 23, 2018), https://docquery.fec.gov/pdf/413/201802239095523413/201802239095523413.pdf (listing the PAC's address as 224 E 6th Ave, Tallahassee, Florida).

40. Also in March 2018, New Republican PAC commissioned and paid for a poll that "tested Scott's competitiveness in a match-up against incumbent Senator Bill Nelson." Ex. B, Supp. Admin. Compl. at 1 & Ex. M, MUR 7370. The poll surveyed likely voters in Florida "between March 10 and 13, 2018," and was paid for by New Republican PAC on March 14, 2018. *Id.*

---

[14] Ex. A, Admin. Compl. at 2 & Ex. B, MUR 7370 (quoting Caputo & Dixon, *supra* note 10).

41. On April 9, 2018, the same day that Scott declared his candidacy for U.S. Senate, New Republican PAC changed its website and mission statement. Ex. A, Admin. Compl. at 3, MUR 7370. Where the PAC previously indicated that its purpose was to support President Trump, it changed its description to "an Independent Expenditure Only PAC (i.e., a Super PAC) focused on the election of Rick Scott in the race for Florida United States Senate." *Id.* at 3 & Ex. K. The super PAC's website was likewise updated to focus solely on supporting Scott, including an "About Rick" page and others detailing Scott's position on various issues. *Id.* According to New Republican PAC's FEC reports, the super PAC appears to have paid for its website redesign on March 29, 2018, almost two weeks before Scott declared his candidacy. Ex. B, Supp. Admin. Compl. at 2 & Ex. N, MUR 7370.

42. On May 3, 2018, just 24 days after Scott's official announcement of his Senate run, and less than two months after he was still being publicly identified as the New Republican PAC's chair, the super PAC released a TV advertisement to begin airing the following week that attacked Senator Bill Nelson. Ex. C, Admin. Compl. at 3 & n.11, MUR 7496. On June 11, New Republican PAC launched another TV and social media advertising blitz opposing Nelson, again urging voters to "Term Limit Career Politician Bill Nelson." *Id.* at 3 & n.12.

## ADMINISTRATIVE PROCEEDINGS

### I. Plaintiff's Administrative Complaint

43. On April 10, 2018, Plaintiff filed an administrative complaint (which Plaintiff supplemented on April 17, 2018) asking the FEC to find "reason to believe" that (1) Scott failed to timely file a Statement of Candidacy in violation of 52 U.S.C. § 30102(e)(1); (2) the Scott Campaign failed to timely file a Statement of Organization and file required campaign spending reports in violation of 52 U.S.C. §§ 30103(a) and 30104; and (3) New Republican PAC, as an

entity established, financed, maintained, or controlled by Scott, violated 52 U.S.C. § 30125(e) by raising or spending soft money. The FEC designated the matter initiated by ECU's April 10, 2018 administrative complaint as Matter Under Review ("MUR") 7370.

44. On September 5, 2018, ECU filed a second administrative complaint asking the FEC to find reason to believe that in May and June 2018, New Republican PAC made, and the Scott Campaign accepted, "illegal in-kind contributions by financing communications to support Scott's Senate candidacy using strategic campaign information obtained through Scott's involvement with the PAC." *See* Ex. C, Admin. Compl. at 4, MUR 7496. The FEC designated the matter initiated by ECU's September 5, 2018 administrative complaint as MUR 7496.

## II. The General Counsel's Recommendation to the Commission

45. Based on Plaintiff's administrative complaints in MURs 7370 and 7496, written replies by Scott, the Scott Campaign, and New Republican PAC, as well as all other available evidence, the FEC's General Counsel recommended that the Commission find reason to believe that: (1) Scott violated 52 U.S.C. § 30102(e)(1) by failing to timely file his Statement of Candidacy and designate a principal campaign committee; (2) the Scott Campaign violated 52 U.S.C. §§ 301303(a) and 30104 by failing to timely file a Statement of Organization and disclosure reports; and (3) New Republican PAC violated 52 U.S.C. § 30125(e) by soliciting, receiving, or spending soft money in connection with a federal election. *See* General Counsel's Report at 11-22. Pending the outcome of investigations of these claims, the General Counsel recommended that the Commission take no action—at that time—as to ECU's allegations that New Republican PAC made, and Scott and the Scott Campaign accepted and failed to report, impermissible and excessive in-kind contributions in the form of coordinated expenditures.

46. The General Counsel's recommendations rested on two primary conclusions. First, "the available information indicates that Scott became a federal candidate as early as 2017 because, as Chair of New Republican, he undertook activities designed to amass funds that were to be spent on supporting his Senate candidacy after he declared such candidacy in April 2018." General Counsel's Report at 14; *see also id.* at 15 (highlighting that, "despite its stated purpose of supporting 'New Republicans,' New Republican focused almost exclusively on Scott's candidacy after he became Chair"). Second, because "Scott likely became a candidate while he was Chair of New Republican in 2017," "the available information supports a reasonable inference that Scott controlled New Republican and that New Republican and Scott were thus subject to the Act's soft money prohibitions from the time that Scott became a federal candidate." *Id.* at 19.

### III.  The Commission's Dismissal of the Complaint

47. On May 20, 2021, the FEC voted 3–3 on a motion to approve the recommendations of its General Counsel in MURs 7370 and 7496. *See* Certification, MURs 7370 and 7496 (May 28, 2021), https://www.fec.gov/files/legal/murs/7370/7370_15.pdf. The motion failed because the votes of four Commissioners are necessary to find reason to believe the law has been violated. *See* 52 U.S.C. § 30109(a)(2).

48. On June 10, 2021, the FEC voted 3–3 on a motion to dismiss, under *Heckler v. Chaney*, the allegations that Scott failed to file his Statement of Candidacy on time and that the Scott Campaign failed to file a Statement of Organization on time. *See* Certification at ¶¶ 1(a)-(b), MURs 7370 and 7496 (June 14, 2021), https://www.fec.gov/files/legal/murs/7370/7370_16.pdf. The FEC also deadlocked, 3–3, on motions to find no reason to believe that New Republican violated the soft-money ban, and to dismiss ECU's other allegations. *Id.* at ¶¶ 1(c)-(g). These motions likewise failed for lack of four votes. *See* 52 U.S.C. § 30109(a)(2).

49. The same day, June 10, 2021, the FEC decided by a vote of 5–1 to "[c]lose the file" on Plaintiff's administrative complaints, thereby dismissing them. *See* Certification at ¶ 2, MURs 7370 and 7496 (June 14, 2021), https://www.fec.gov/files/legal/murs/7370/7370_16.pdf.

50. By a letter dated June 15, 2021, the Commission notified Plaintiff that it had dismissed Plaintiff's administrative complaints and closed the file. Notification to ECU at 1, MUR 7370 (June 15, 2021), https://www.fec.gov/files/legal/murs/7370/7370_17.pdf; Notification to ECU at 1, MUR 7496 (June 15, 2021), https://www.fec.gov/files/legal/murs/7496/7496_14.pdf.

51. On July 21, 2021, the three Commissioners who voted against the OGC's recommendation to find reason to believe issued a Statement of Reasons purporting to explain the reasons for their votes. Statement of Reasons of Vice Chair Allen Dickerson and Comm'rs Sean J. Cooksey and James E. "Trey" Trainor III, MURs 7370 and 7496 (July 21, 2021), https://www.fec.gov/files/legal/murs/7370/7370_21.pdf. *See FEC v. Nat'l Republican Senatorial Comm.*, 966 F.2d 1471, 1476 (D.C. Cir. 1992) ("[T]o make judicial review a meaningful exercise, the three Commissioners who voted to dismiss must provide a statement of their reasons for so voting. Since those Commissioners constitute a controlling group for purposes of the decision, their rationale necessarily states the agency's reasons for acting as it did.") (citation omitted).

52. Two of the three commissioners who voted to approve the OGC's recommendation that the FEC find reason to believe also issued a Statement of Reasons explaining their votes. *See* Broussard & Weintraub SOR. As those Commissioners stated, "[f]or more than a decade, since the Supreme Court's *Citizens United* decision, there has been a rise in complaints," such as that in this case, "involving allegations of candidates flouting the Commission's rules by outsourcing early campaigning to outside political committees." *Id.* at 7. Such violations of FECA's soft-

money ban "deprive[] the public of valuable campaign information, and merit[] further review by the Commission." *Id.*

## CAUSE OF ACTION

### *Dismissal Contrary to Law, 52 U.S.C. § 30109(a)(8)(A)*

53. Plaintiff realleges and incorporates paragraphs 1-52 as if fully set forth herein.

54. As detailed above, Plaintiff's administrative complaints established reason to believe that (1) Rick Scott violated 52 U.S.C. § 30102(e)(1) and 11 C.F.R. § 101.1(a) by failing to timely file his Statement of Candidacy; (2) Rick Scott for Florida and Salvatore A. Purpura in his official capacity as Treasurer violated 52 U.S.C. §§ 30103(a) and 30104 by failing to timely file a Statement of Organization and required disclosure reports; and (3) New Republican PAC and Gentry Collins in his official capacity as Treasurer violated 52 U.S.C. § 30125(e) by soliciting, receiving, directing, transferring, or spending soft money.

55. Plaintiff's administrative complaint in MUR 7496 also established reason to believe that (1) Rick Scott violated 52 U.S.C. §§ 30116(f), 30118(a), and 30125(e) by accepting impermissible and excessive in-kind contributions in the form of coordinated communications; (2) Rick Scott for Florida and Salvatore A. Purpura in his official capacity as Treasurer violated 52 U.S.C. §§ 30104(b), 30116(f), 30118(a), and 30125(e) by accepting and failing to report impermissible and excessive in-kind contributions in the form of coordinated expenditures; and (3) New Republican PAC and Gentry Collins in his official capacity as Treasurer, violated 52 U.S.C. §§ 30104(b), 30116(f), 30118(a), and 30125(e) by making and failing to report impermissible and excessive in-kind contributions in the form of coordinated expenditures.

56. The FEC's failure to find reason to believe that these violations occurred and its subsequent dismissal of Plaintiff's administrative complaints were arbitrary, capricious, and contrary to law. 52 U.S.C. § 30109(a)(8)(A); 5 U.S.C. § 706; *see also Orloski*, 795 F.2d at 161.

## REQUESTED RELIEF

WHEREFORE, Plaintiff requests that this Court:

(1) Declare that the FEC's dismissal of Plaintiff's administrative complaints in MURs 7370 and 7496 was arbitrary, capricious, and contrary to law under 52 U.S.C. § 30109(a)(8)(A);

(2) Order the FEC to conform with this declaration within 30 days, pursuant to 52 U.S.C. § 30109(a)(8)(C);

(3) Award Plaintiff its costs and reasonable attorney's fees incurred in this action; and

(4) Grant such other relief as the Court may deem just and proper.

Dated: August 9, 2021

Respectfully submitted,

/s/ Adav Noti
Adav Noti (DC Bar No. 490714)
Kevin P. Hancock*^
CAMPAIGN LEGAL CENTER ACTION
1101 14th Street NW, Ste. 400
Washington, DC 20005
(202) 736-2200
anoti@campaignlegalcenter.org
khancock@campaignlegalcenter.org

*Counsel for Plaintiff End Citizens United PAC*

\* *Barred in the State of New York. Not admitted to the D.C. Bar. Practicing under the supervision of Adav Noti, member of the D.C. Bar.*

^ *Application for pro hac vice admission forthcoming.*